# EXHIBIT A

**THE JOEL BIEBER FIRM**
BY: MELISSA FRY HAGUE
IDENTIFICATON NO. 202850
TWO LIBERTY PLACE
50 SOUTH 16ᵗʰ STREET
SUITE 1700
PHILADELPHIA, PA 19102
(215) 999-9183



*Filed and Attested by the
Office of Judicial Records
14 MAR 2022 01:44 pm*

ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| **JOHN K.A. DOE,** <br><br> *Plaintiff,* <br> vs. <br><br> **THE UNIVERSITY OF THE ARTS** <br> 320 South Broad Street <br> Philadelphia, PA 19102; <br><br> **KATHRYN DONOVAN** <br> 803 McCabe Avenue <br> Wilmington, DE, 19802; <br><br> **DANIEL DUNN** <br> 3 Winterberry Place <br> Delran, NJ, 08075; <br><br> **JOHN DOES 1-5, INDIVIDUALS** <br><br> *Defendants.* | **PHILADELPHIA COUNTY** <br> **COURT OF COMMON PLEAS** <br><br><br> **MARCH TERM, 2022** <br><br> **DOCKET No.:** <br><br><br> **JURY OF 12 DEMANDED** <br><br> **THIS IS NOT AN ARBITRATION** <br> **MATTER** |

## **COMPLAINT**

John K.A. Doe ("Plaintiff") through his undersigned counsel files this civil complaint against Defendants, The University of the Arts ("UArts" and "The University"), its employees/faculty members, Kathryn Donovan ("Donovan") and Daniel Dunn ("Dunn"), jointly and/or severally, separate sums in excess of Fifty Thousand Dollars ($50,000) in damages, upon causes of action whereof the following are true and accurate statements:

1

Case ID: 220301385

## NATURE OF THE ACTION

1.      Plaintiff, a former student at UArts, seeks damages against defendants UArts and Donovan for their failure to properly handle Plaintiff's Title IX complaint after his professor, Defendant Daniel Dunn, sexually assaulted him in violation of UArts' Title IX policy on sexual misconduct, sexual violence, and sexual harassment.  Defendants UArts and Donovan failed to follow the University's Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking and Harassment Policy ("The Policy") when Defendant Donovan failed to immediately report Plaintiff's complaint to the Title IX Coordinator, lied to Plaintiff about drafting a statement for his review, mislead Plaintiff to believe the Title IX process was underway when, in truth, Donovan had not taken any action, and lied to Plaintiff about terminating the employment of Defendant Dunn.

2.      Plaintiff seeks damages against Defendant UArts for its failure to properly handle and investigate Plaintiff's report of sexual assault and/or impose proper interim sanctions against Defendant Dunn so to ensure the safety of the students at The University, including Plaintiff. The University failed to properly train, instruct and/or inform its faculty members, employees and/or agents on how to properly handle reports of sexual assault, sexual violence, and sexual harassment thereby creating an unsafe environment.  The University further failed to have a trained and competent Title IX Coordinator in place when Plaintiff reported that he was sexually assaulted.

3.      Plaintiff seeks damages against Defendant Dunn for engaging in non-consensual sexual contact when Defendant Dunn performed oral sex on Plaintiff, John K.A. Doe, while Plaintiff was incapacitated an unable to provide consent and as a result subsequently infecting Plaintiff with Syphilis.

Case ID: 220301385

## THE PARTIES

4.    Plaintiff is an adult male resident of the state of California.

5.    Defendant, University of the Arts is a private institution of higher learning and incorporated as an educational institution in the Commonwealth of Pennsylvania.  The University is a corporation with a principal address of 320 South Broad Street, Philadelphia, PA 19102.  It holds itself out as the only institution of its kind in the nation offering programs in design, fine arts, media arts, crafts, music, dance, theater, and writing.

6.    At all times material hereto, UArts, purposefully established significant contacts in the County of Philadelphia, Commonwealth of Pennsylvania, and has carried out, and continues to carry out substantial, continuous, and systematic business and educational activities in the County of Philadelphia, Commonwealth of Pennsylvania.

7.    At all times material hereto, Defendant, UArts, operated by and through its authorized agents, servants, employees, officers, and/or faculty members who were acting within the course and scope of their employment, authority, agency and/or faculty membership at UArts.

8.    Defendant Kathryn Donovan is a resident of the State of Delaware residing at 803 McCabe Avenue, Wilmington, DE, 19802.

9.    At all times material hereto, Defendant Donovan was a professor, faculty member, adjunct, instructor and/or head of the Musical Theater Department of The Brind School of Theater at The University.

10.    At all times material hereto, Defendant Donovan was an employee, agent and/or representative of Defendant UArts and was acting within the scope of her employment or agency with UArts.

Case ID: 220301385

11.    Defendant Daniel Dunn is a resident of the State of New Jersey residing at 3 Winterberry Place, Delran, NJ, 08075.

12.    At all times material hereto, Defendant Dunn was a professor, faculty member, adjunct, and/or instructor in the Musical Theater Department of The Brind School of Theater at The University.  Defendant Dunn had been a professor, faculty member, adjunct and/or instruction with The University since 2016.

13.    At all times material hereto, Defendant Dunn was an employee, agent and/or representative of Defendant UArts and was acting within the scope of his employment or agency with UArts.

14.    At all times material hereto, Defendants John Does 1-5 were individuals who were acting in their capacity as officers, principal officers, agents, servants, employees and/or faculty members of Defendant, UArts.

## STATEMENT OF FACTS

15.    Plaintiff John K.A. Doe enrolled in the four-year Musical Theater Bachelor of Fine Arts degree program, The Brind School of Theater at the University of the Arts in the fall of 2018 as a freshman.

16.    At all times material hereto, Defendant Donovan was the Head of the Musical Theater Program in the The Brind School of Theater at The University.

17.    After successfully completing his first year in the musical theater program, Plaintiff started the fall 2019 semester as a sophomore.

18.    In the fall of 2019, as part of the required curriculum, Plaintiff enrolled in a yearlong class called Jazz Dance Practice which was taught by Defendant Dunn.

4

Case ID: 220301385

19.     Upon information and belief, in or around December 2019, Defendant Dunn and Plaintiff began communicating on an online platform, Instagram, through "liking" and "commenting" on each other's Instagram posts.

20.     Upon information and belief, in or around January or February 2020, Defendant Dunn invited Plaintiff to meet him at his theater company located in Philadelphia, Pennsylvania.

21.     Upon information and belief, in or around January or February 2020, Plaintiff met Defendant Dunn in the evening hours at his theater company. Upon arrival at Defendant Dunn's theater company, Plaintiff was greeted by Defendant Dunn who provided, supplied and/or served Plaintiff, who was not legal drinking age, with alcohol. Plaintiff and Defendant Dunn did not engage in any sexual contact.

22.     Upon information and belief, after the social visit at Defendant Dunn's theater company, Defendant Dunn invited Plaintiff to his home located in Philadelphia, Pennsylvania.

23.     Upon information and belief, in or about March 2020 Plaintiff met Defendant Dunn at his residence in Philadelphia, Pennsylvania. During that social visit Defendant Dunn provided, supplied and/or served Plaintiff alcohol.

24.     Upon information and belief, while at Defendant Dunn's residence, during a discussion about the film The Wizard of Oz, Defendant Dunn invited Plaintiff into his bedroom to watch a movie. Defendant Dunn turned on the movie The Wizard of Oz. Defendant Dunn continued to provide, supply and serve Plaintiff alcohol the entire evening. Plaintiff blacked out while watching the movie and lost consciousness. Plaintiff was in and out of consciousness and unable to control his faculties. Plaintiff recalls Defendant Dunn taking his shirt off, which made Plaintiff feel uncomfortable and nervous but he wasn't able to remain conscious. Plaintiff recalls

5

Case ID: 220301385

briefly regaining consciousness and seeing the movie The Wizard of Oz on the television and seeing Defendant Dunn performing oral sex on Plaintiff.

25.    At no time did Plaintiff consent to any kind of sexual activity including oral sex. When Defendant Dunn was performing oral sex on Plaintiff, Plaintiff was unconscious and unable to control his faculties.  Plaintiff was not able to maintain a conscious state.

26.    Plaintiff woke the next day and found himself in Defendant Dunn's bed in his residence.  Plaintiff did not feel well and was barely able to walk when he attempted to leave Defendant Dunn's residence.

27.    Upon information and belief, the day after Defendant Dunn assaulted Plaintiff, at approximately 4:36 p.m., Defendant Dunn sent Plaintiff a private message on Instagram asking, "How was your slumbbbber?"  Plaintiff responded by private message stating, "I think I just got sober.  I did not mean to drink that much so I apologize greatly for that."

28.    Upon information and belief, at all times material hereto, Defendant Dunn knew or should have known that Plaintiff was not of legal drinking age when Defendant Dunn provided, supplied and/or served Plaintiff alcohol.

29.    Upon information and belief, Defendant Dunn and Plaintiff did not see each other outside of class after the assault.

## PUNITIVE DAMAGES ALLEGATIONS

30.    Upon information and belief, in April 2020 Plaintiff began to suffer from loss of appetite, nausea, jaundice, loss of energy, a rash and abdominal pain.

31.    On or about April 30, 2020 Plaintiff was hospitalized at the Lurie Children's Hospital of Chicago and diagnosed with Syphilis.  Plaintiff was treated with three injections of penicillin as well as oral antibiotics.

6

Case ID: 220301385

32.     After Plaintiff was told he was diagnosed with Syphilis, he sent Defendant Dunn a private message in Instagram advising Defendant Dunn of his recent diagnosis and stating that Defendant Dunn was the last person he was with sexually.  Plaintiff also told Defendant Dunn that he could not remember everything that happened that night.

33.     Defendant Dunn responded to Plaintiff's message stating, "To be completely transparent, to my knowledge nothing happened between us that would have caused any type of contraction in that way.  Also, I am fully tested regularly and was tested prior to us hanging out and after and have received negative results both times.  I will certainly get tested again, and I am sorry you had to go through that.  Thank you for the heads up."

34.     Upon information and belief, Plaintiff contracted syphilis from Defendant Dunn the night that Defendant Dunn engaged in nonconsensual sexual contact with Plaintiff at Defendant Dunn's residence.

35.     On or about May 11, 2020 Plaintiff emailed Defendant Dunn requesting an extension of time for him to submit the "final dance assignment" due to his illness.

36.     Defendant Dunn responded stating, "If you are unable to get the assignment in due to exhaustion, I completely understand and can count this as excused."  Subsequently, Defendant Dunn excused the assignment for Plaintiff.

37.     Upon information and belief, other students sent requests to Defendant Dunn to extend the deadline for the "final dance assignment."  However, Plaintiff was the only student where Defendant Dunn responded to the request stating that he would excuse the assignment.

38.     Upon information and belief, the reason for which Defendant agreed to excuse the assignment for Plaintiff was based on sex and/or the nonconsensual sexual contact that occurred

Case ID: 220301385

between the two Defendant Dunn and Plaintiff and/or Defendant transmitting syphilis to Plaintiff.

39.　　At all relevant times, Defendant Dunn was in a position of power over Plaintiff because he was Plaintiff's professor, teacher and instructor at The University.

40.　　At all relevant times, Defendant Dunn had direct control over the evaluation and grading of Plaintiff in the Jazz Dance Practice class.

41.　　Defendant Dunn engaged in unwelcome verbal and/or non-verbal contact, sexual advance, request for sexual contact or sexual favors, or other unwanted conduct of a sexual nature that was sufficiently severe, persistent or pervasive or having the effect of unreasonably interfering with an individual's academic or educational experience.

42.　　On or about May 13, 2020 Plaintiff emailed Defendant Donovan who was the Head of the Musical Theater Department at The University and requested to talk to her about an important situation.

43.　　On or about the evening of May 13, 2020, Plaintiff spoke with Defendant Donovan and reported to her in detail that Defendant Dunn, who was his professor at the time, invited Plaintiff to his home and supplied, served and provided Plaintiff with alcohol and then performed oral sex on Plaintiff without his consent.  Plaintiff also told Defendant Donovan that Defendant Dunn gave him syphilis causing him to become ill and requiring him to be hospitalized.

44.　　Defendant Donovan was a "Responsible Employee" under The Universities Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking and Harassment Policy, Updated August 2019 and was mandated to report any incidents of misconduct under The Policy to The University's Title IX Coordinator.

8

Case ID: 220301385

45.     The University's Policy states that it applies to conduct that occurs "In the context of University employment, education, research, recreational, social or artistic activity, *irrespective of the location of the occurrence*, if the conduct has or can be reasonably predicted to have a continuing negative effect on the University and its students, faculty, visiting faculty, affiliates, staff, contractors, vendors, visitors or guests."  (emphasis added).

46.     Upon information and belief, at all times material hereto, Defendant Donovan failed to properly advise Plaintiff of his rights under Title IX.

47.     Defendant Donovan failed to immediately inform The University's Title IX Coordinator.

48.     Upon information and belief, on or about May 2020, UArts failed to have a Title IX Coordinator and/or a trained interim Title IX coordinator in violation of state and federal laws and The University's own policies.

49.     Defendant Donovan failed to provide Plaintiff with Support Resources as mandated by The Policy, including, but not limited to, University and local counseling and support resources, assistance with making a report, resources about and how to file a complaint under The University's Policy, and resources about what to expect from the University's investigation process under The Policy.

50.     Defendant Donovan failed to provide Plaintiff with information regarding the following in violation of The University's Policy:

    a.  The right to seek medical treatment, and explain the importance of obtaining and preserving forensic and other evidence;

    b.  The right to contact law enforcement or to decline to contact law enforcement;

    c.  The right to seek a protective order;

9

Case ID: 220301385

d.   The available University and community resources;

e.   The right to request reasonable academic, housing, employment, and other
accommodations;

f.   The right to seek informal resolution or formal resolution under this Policy;

g.   The University's prohibition against retaliation; and

h.   Any other relevant information that may address the particular individual's safety
or procedural questions and concerns.

51.    No interim support and/or protective measures were discussed with or provided to Plaintiff prior to the start of the fall 2020 semester to assure him that he could accept to continue his education in a safe educational environment free from sexual harassment, sexual violence and sexual misconduct.

52.    Plaintiff took a leave of absence during the fall 2020 semester with the intention of returning in the Spring of 2021.  However, as a result of the trauma Plaintiff was suffering from caused by The University's failure to properly handle Plaintiff's Title IX complaint, he withdrew from The University in or about January 2021.

53.    At all times material hereto, Defendant Donovan did not advise Plaintiff of his right to an advisor.

54.    At all times material hereto, Defendant Donovan failed to adequately explain to Plaintiff the difference between the informal resolution process and the formal resolution process as stated in the University's Policy.

55.    At all times material hereto, Defendant Donovan failed to explain and/or assist Plaintiff with the process of filing a formal complaint under Title IX in accordance with The University's Policy.

Case ID: 220301385

56.     At all times material hereto, Defendant Donovan failed to fully inform or ensure that Plaintiff was fully informed of all of his options under The University's Policy.

57.     Instead, after Plaintiff informed Defendant Donovan that he was served alcohol by his professor who then performed oral sex on him while he was in and out of consciousness, Defendant Donovan told Plaintiff that she would take care of things by writing out a statement based on what Plaintiff told her and she would send it to him for his review.  Further, in violation of The University's policy, Defendant Donovan discouraged, intimated, and dissuaded Plaintiff from making a formal Title IX complaint by leading him to believe that a formal Title IX Complaint would result in a public trial.

58.     After the initial call with Defendant Donovan, Plaintiff followed up with her on June 12, September 22, October 4 and October 6 inquiring about the written statement Defendant Donovan told him she was going to draft and send to him for is approval.

59.     On June 15, 2020 Defendant Donovan wrote to Plaintiff implying that she was going to terminate Defendant Dunn's employment with the University by stating, "I have moved ahead with my plan to change the hiring for fall to reflect our conversation and will be putting an anonymous note on the file (which I will put past you before I do)- the delay is in my crafting precollege first and then moving to the fall hiring process, but I have already announced my intention (with no details or names shared) and so you can consider the plan in place. Sending you warmth and love and in a few weeks look for a statement for you to approve from me that will go on the official file."

60.     Defendant Donovan responded to Plaintiff on September 22, 2020 stating, "many GENUINE apologies. there are so many things right now that put a big delay on that note, and it

Case ID: 220301385

is very important to me. I will reach back this week with more information. thank you for reminding me. "

61.    On or about October 6, 2020, Defendant Donovan responded to Plaintiff's plea for action by stating, "Please write a statement that you would like for me to have on file to cover the information that we discussed this summer. I have a large number of responses to your email and I would rather respond than react, so I will keep this short. **As you know, I have long since terminated the employment of this individual**, not to be employed again. With the departure of the Theater Dean and the university's Title IX Coordinator, there is not in this interim semester a person to whom I would directly report the incident to carry out a trial or legally approach the matter. It was my understanding, though, from our conversation that you were interested in avoiding such an arrangement. **Which means that I am left as the superior of this individual and this position, and I have terminated their employment.**" (emphasis added).

62.    On or about October 7, 2020, Defendant Donovan wrote to Plaintiff advising him that she planned to speak to someone from the Title IX office that day for the first time. Defendant Donovan further admitted that she should have contacted the Title IX office when Plaintiff first reported to her. Defendant Donovan further indicated that she was conducting her own research to determine the appropriate steps under Title IX.

63.    At all times material hereto, Defendant Donovan failed to inform anyone at The University's Title IX office about Plaintiff's complaint for five months.

64.    Upon information and belief, Defendant Donovan first informed The University's Title IX coordinator of Plaintiff's allegations on or about October 7, 2020.

65.    On or about October 8, 2020, Plaintiff was contacted by Sara Pyle, Assistant Vice President for Student Services Student Affairs and provided a link to the page on The

Case ID: 220301385

University's website about the Title IX process as well as a one-page document titled Title IX Resources and Reporting Options.

66.    On October 12, 2020, Plaintiff was contacted by the investigator that The University hired to conduct the Title IX investigation.

67.    On or about November 16, 2020 a Notice of Alleged Allegations was first sent to Defendant Dunn.

68.    At all times material hereto, there were numerous unexplained and inexcusable delays throughout the Title IX investigation, including, but not limited to, the finalization of the investigators report and evidence file.

69.    On or about January 22, 2021, the investigator informed Plaintiff that the report would be finalized and sent to him for his review the week of January 25, 2021.

70.    On or about April 9, 2021, Plaintiff was first sent a copy of the Investigation report and evidence file for his review and response.  At no time was Plaintiff provided an explanation for the delay in the finalization of the investigators report and evidence file.

71.    On or about July 29, 2021, fourteen (14) months after Plaintiff first reported he was raped by his professor, the Title IX hearing was held where it was determined, using the preponderance of evidence standard, that Defendant Dunn violated the following University policies:

    a.    Engaging in sexual misconduct against Plaintiff;

    b.    Engaging in sexual violence against Plaintiff; and

    c.    Engaging in sexual harassment against Plaintiff.

72.    The University's Policy defines Sexual Misconduct as "a range of behaviors that includes, but is not limited to, sexual or gender-based harassment, sexual violence, sexual

Case ID: 220301385

exploitation, relationship and interpersonal violence, stalking, and retaliation…. Additional factors to consider include whether the conduct was unwelcome and whether a reasonable person in that individual's position would have perceived the conduct as intimidating, hostile, offensive, or otherwise prohibited by this policy."

73.     The University's Policy defines Sexual Violence as "Sexual violence is defined as having or attempting to have sexual contact with another person without that person's consent. This may include sexual intercourse or sexual contact achieved by the use or threat of force or coercion, where an individual does not consent to the sexual act, or where an individual is incapacitated."

74.     The University's Policy defines non-consensual sexual intercourse as "having or attempting to have sexual intercourse with another individual without consent. Sexual intercourse includes vaginal or anal penetration, however slight, with a body part or object, or oral penetration involving genital-to-mouth contact."

75.     The University's Policy defines Sexual Harassment as:

> Sexual harassment is defined as any unwelcome verbal or non-verbal contact, sexual advance, request for sexual contact or sexual favors, or other unwanted conduct of a sexual nature where:
> 1. Submission to or rejection of such behavior is made implicitly or explicitly a term or condition of instruction, employment, advancement, evaluation or participation in any University activity, program or benefit (commonly referred to as quid pro quo harassment); or
>
> 3. Such behaviors are sufficiently severe, persistent, or pervasive to have the purpose or effect of unreasonably interfering with an individual's academic or educational experience, working environment, or living conditions by creating an intimidating, hostile, or offensive environment (commonly referred to as hostile environment harassment).

Case ID: 220301385

76.     On or about July 29, 2021, at the Title IX hearing, Defendant Donovan admitted she lied to Plaintiff when she advised him that she terminated the employment of Defendant Dunn in the fall of 2020.  Defendant Donovan further admitted that she did not even have the authority to terminate Defendant Dunn's employment with the University.  Defendant Donovan also admitted that she lied to Plaintiff when she told him she was taking detailed notes of their conversation on May 13, 2021 when Plaintiff first reported to her that Defendant Dunn raped him.  Defendant Donovan also admitted to lying about "putting an anonymous note on the file" of Defendant Dunn regarding the allegations asserted by Plaintiff.  Defendant Donovan admitted that she continually lied to Plaintiff over the course of five (5) months about crafting a statement for Plaintiff's review.

77.      Upon information and belief, Defendant Dunn was offered a reasonable assurance of a teaching position in the fall semester of 2020.

78.     Under The University's Policy, Section V. Reporting Responsibilities of University Employees, it states:

> With the exception of the confidential resources listed in this policy, all University employees, full and part-time, regardless of tenure or contractual status, are considered "Responsible Employees" and are mandated to report any incidents of misconduct under this Policy to the University's Title IX Coordinator. Responsible Employees are required to share with the Title IX Coordinator all known information, including the identities of any alleged Respondent (if known), the identities of any Complainants, the names of other witnesses involved in the alleged misconduct, as well as all other relevant facts of which the Responsible Employee is aware, including the date, time, and location of the incident and any statements made by parties or witnesses.

79.     At all times material hereto, Defendant Donovan violated The University's Policy and Title IX of the Education Amendments of 1972 when she failed to immediate report Plaintiff's complaint to the UArts Title IX Coordinator/Office.

Case ID: 220301385

80.    At all times material hereto, Defendant Donovan violated The University's Policy and Title IX of the Education Amendments of 1972 when she failed to fully and accurately advise Plaintiff of his rights and options under The Policy and Title IX.

81.    At all times material hereto, Defendant Donovan attempted to intimate, coerce, and prevent Plaintiff from filing a formal Title IX complaint when she misrepresented to Plaintiff that a formal Title IX report would result in a public trial.

82.    At all times material hereto, Defendant UArts failed to ensure its employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Donovan, were properly trained on how to handle reports of sexual misconduct, sexual harassment, and/or sexual violence.

83.    At all times material hereto, Defendant UArts failed to ensure its employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Dunn, were properly trained and advised on The University's policies against sexual misconduct, sexual violence, sexual harassment and/or serving underage students alcohol.

84.    At all times material hereto, Defendant UArts failed to mandate that all of its employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Donovan, received proper training on how to handle reports of sexual misconduct, sexual harassment, and/or sexual violence.

85.    At all times material hereto, Defendant UArts failed to provide its employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Donovan, with accurate information regarding their reporting responsibilities according to The University's Policy and Title IX.

Case ID: 220301385

86.    Upon information and belief, at all times material hereto, Defendant UArts did not provide proper training or instruction to its employees, professors, faculty members, adjuncts, and/or instructors, including, but not limited to, Defendants, Donovan and Dunn, on sexual misconduct, sexual violence and sexual harassment.

87.    Upon information and belief, at all times material hereto, Defendant UArts failed to require and mandate training for all of its employees, professors, faculty members, adjuncts, and/or instructors, including Defendants Donovan and Dunn on sexual assault awareness and prevention, sexual misconduct, sexual violence and sexual harassment.

88.    Upon information and belief, at all times material hereto, Defendant UArts failed to ensure that its employees, professors, faculty members, adjuncts, and/or instructors, including Defendants Donovan and Dunn, received proper and sufficient training on sexual assault awareness and prevention, sexual misconduct, sexual violence and sexual harassment.

89.    Upon information and belief, at all times material hereto, Defendant UArts failed to suspend and/or terminate the employment of Defendant Dunn for misconduct, specifically, the sexual misconduct, sexual violence and sexual harassment committed against Plaintiff.

90.    Upon information and belief, at all times material hereto, Defendant UArts failed to implement and enforce a policy prohibiting employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Dunn, from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

91.    Upon information and belief, at all times material hereto, Defendant UArts failed to properly communicate to its employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Dunn, The University's policy prohibiting employees,

17

Case ID: 220301385

professors, faculty members, adjuncts, and/or instructors, including Defendant Dunn, from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

92.    Upon information and belief, at all times material hereto, Defendant UArts failed to ensure that its employees, professors, faculty members, adjuncts, and/or instructors, including Defendant Dunn, were aware of and knew The University had a policy prohibiting employees, professors, faculty members, adjuncts, and/or instructors from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

93.    Upon information and belief, at all times material hereto, Defendant UArts did not put into place sufficient repercussions and/or disciplinary action for employees who violated the policy prohibiting employees, professors, faculty members, adjuncts, and/or instructors from asking students to go on a date, making any sexual advances towards a student, or becoming romantically or sexually involved with a student in any way.

94.    At all times material hereto, in violation of state and federal laws, Defendant UArts failed to provide Plaintiff a safe educational environment free from sexual harassment, sexual violence and sexual misconduct.

95.    At all times material hereto, Defendant UArts failed to make and/or put into place any accommodations that would have allowed Plaintiff to return to The University and continue his education in a safe environment free from sexual harassment, sexual violence and sexual misconduct after Plaintiff reported that his professor, Defendant Dunn, raped him.

96.    At all times material hereto, Defendants, UArts and Dovovan, lied to Plaintiff about the employment status of Defendant Dunn.

Case ID: 220301385

97.     At all times material hereto, Defendant UArts' failure to properly supervise Defendants Donovan and Dunn and its negligence in retaining Defendants Donovan and Dunn was in violation of Pennsylvania common law.

98.     At all times material hereto, the acts, conduct, and omissions of Defendants, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff.

99.     This action arises from Defendants' blatant disregard for Plaintiff's federal and state rights, and Defendants' deliberately indifferent and unreasonable response to teacher-on-student sexual assault and rape.

100.     The negligent, grossly negligent, careless, reckless and/or other liability producing conduct of all Defendants was the direct and proximate cause of the permanent and severe physical, emotional and psychological trauma and injuries suffered by Plaintiff.

101.     This incident, and actions and inactions of the Defendants individually, jointly and/or severally caused Plaintiff permanent and severe physical, emotional and psychological trauma and injuries, hospitalization and medical treatment for syphilis. Plaintiffs trauma and injuries resulted in, among others, depression, major depressive disorder, anxiety, posttraumatic stress disorder, as well as other psychological and emotional injuries that triggered a pre-existing eating disorder.

102.     As a direct and proximate result of the negligence, gross negligence, recklessness and other liability producing conduct of the Defendants, Plaintiff has in the past and continues to suffer mental anguish, psychological trauma, psychological injury, emotional harm, humiliation, embarrassment, fear, loss of well-being, and restrictions on his ability to engage in normal interpersonal relationships and pleasures of life, and other intangible losses.

Case ID: 220301385

103. As a direct and proximate result of the negligence, gross negligence, carelessness, recklessness and other liability producing conduct of the Defendants, Plaintiff has been prevented and will be prevented in the future from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings, a loss of earning capacity as well as financial loss equivalent to tuition and fees for four semesters at UArts, housing costs, and other related expenses and a significant delay in obtaining a Bachelor's degree and delay in post-undergraduate employment.

104. Defendants are jointly and severally liable for the damages suffered by Plaintiff.

## DISCOVERY RULE, ESTOPPEL AND FRAUDULENT CONCEALMENT

105. Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

106. Plaintiff pleads that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiff had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

107. Defendants' failure to report, document, or investigate complaints against Defendant Dunn, and concealment of Defendant UArts' actions taken in response to Plaintiff's report of sexual misconduct, constitute fraudulent concealment that equitably tolls any proffered statute of limitation that may otherwise bar the recovery sought by Plaintiff herein.

108. Defendants are estopped from relying on any statute of limitations defense because they fraudulently concealed and failed to disclose known dangerous behaviors and serious increased risks to Plaintiff's safety, health and wellbeing as a student at The University.

109. Defendants represented that Defendants Dunn and Donovan were competent professors, faculty members, adjuncts, instructors and/or Heads of the musical theater

20

Case ID: 220301385

department and entrusted them with the safety and wellbeing of students, including Plaintiff, instead of upholding their duty to protect students enrolled in UArts from sexual assault and abuse and to ensure students are provided a safe educational environment free from sexual harassment, sexual violence and sexual misconduct.

110.    At all relevant times, Defendants were under a continuing duty under federal law and parallel state laws to protect students, including Plaintiff, from sexual assault and abuse, and to provide a safe educational environment free from sexual harassment, sexual violence and sexual misconduct, and to disclose the true character, quality, and nature of their employees and/or agents.

111.    As a result of Defendants' concealment of the true character, quality and nature of Defendants Dunn and Donovan and their conduct, they are estopped from relying on any statute of limitations defense.

112.    Defendants furthered their fraudulent concealment through acts and omissions, including misrepresenting known dangers of sexual assault and abuse and a continued and systemic failure to disclose and/or cover up such information from/to students, faculty, employees and the public.

113.    Defendants' acts and omissions, before, during, and/or after the act causing Plaintiff's injuries prevented him from discovering the injury or cause thereof until recently.

114.    Defendants' conduct, because it was purposely committed, was known or should have been known by them to be dangerous, heedless, reckless, and without regard to the consequences or the rights and safety of Plaintiff.

**COUNT I**

**BREACH OF CONTRACT**

Case ID: 220301385

**(Plaintiff v The University Of The Arts and Kathryn Donovan)**

115.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

116.    Plaintiff entered into an implied in-fact contract with The University and, by virtue, its employees, agents, servants and/or faculty members, wherein he enrolled in the Musical Theater Bachelor of Fine Arts Program, paid the tuition, attended classes and participated in the Musical Theater curriculum. The University accepted Plaintiff's application, his tuition and fees and began matriculating Plaintiff as an undergraduate student. The University provided Plaintiff with the Handbooks and The Policy.

117.    The University, in exchange for Plaintiff's consideration, promised to prepare Plaintiff for a career in the musical theater industry upon successful completion of the program. In addition, The University and by virtue, its faculty members, employees and agents, agreed to abide by the terms and conditions of the Handbooks and The Policy and afford Plaintiff all Due Process rights as set forth therein.

118.    Plaintiff, to his detriment, relied upon the representations of The University and by virtue, its faculty members, employees and agents, regarding provisions that are expressly stated in the Handbooks and The Policy.

119.    In particular, The University and by virtue, its faculty members, employees and agents, expressly agreed in the Student Handbook under:

    a.  Notice of Non-Discrimination and Equal Opportunity that:

       1)    The University prohibits acts of retaliation against those who report acts of harassment discrimination;

       2)    All faculty…at The University are required to report incidents of sexual misconduct to The University's Title IX Coordinator; and

22

Case ID: 220301385

    3)    The University will promptly and equitably respond to all reports of discrimination and harassment and retaliation…

  b.  Discrimination and Discriminatory harassment that:

    1)    The University will act to remedy all forms of harassment when reported.

  c.  Violence that:

    1)    The University is committed to maintaining a safe working, learning and living environment for all members…Threats, acts of aggression, physical attack and violence are unacceptable…

  d.  Student Code of Conduct that:

    1)    Prohibited behavior of The University of the Arts includes conduct prohibited by the Sex- and Gender-Based Misconduct Policy; and

    2)    Non-compliance with the directions of the University.

  e.  Conduct Review Process:

    1)    Allegations involving sex-and gender-based misconduct will be forwarded to the Title IX coordinator; and

    2)    A…witness who intentionally provides misleading information may be subject to discipline…

120.    In addition to prohibited conduct under The Policy as stated herein, The University and by virtue, its faculty members, employees and agents, further expressly agreed in its Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking and Harassment policy that:

  a.  All University employees, full and part-time, regardless of tenure or contractual status, are considered "Responsible employees" and are mandated to report any

Case ID: 220301385

incidents of misconduct under this Policy to the University's Title IX

Coordinator;

b. Prohibited conduct includes retaliation which is defines as any conduct that has or

is intended to have materially adverse effect on the working, academic, social or

living environment of an individual;

c. An individual making a report of sexual misconduct under The Policy can expect

information regarding: The right to seek a protective order, The right to

information resolution or formal resolution under The Policy, and the University's

prohibition against retaliation;

d. The University may provide reasonable interim support and protective measures

to prevent further acts of misconduct under this Policy and to provide a safe

educational environment; and

e. All University community members are expected to provide truthful information

in any report or proceeding under The Policy.  Knowingly submitting or

providing false or misleading information in bad faith…to cause intentional harm

to another, or to obstruct or delay the University's process in connection with an

alleged Policy violation is prohibited and subject to disciplinary sanctions.

121.    The acts and actions of Defendants UArts and Donovan, as referenced herein,

were arbitrary and capricious, as well as constituting a breach of their contract with Plaintiff.

122.    The University and by virtue, its faculty members, employees and agents,

contracted that they would follow the Student Handbook and The Policy. The University and, by

virtue, its employees and agents, breached their contract with Plaintiff by:

Case ID: 220301385

a.  Failing to ensure Plaintiff was provided a safe educational environment free from sexual abuse, sexual violence and sexual harassment prior to and after he reported he was sexually assaulted by Defendant Dunn;

b.  Failing to take immediate action when Plaintiff reported he was sexually assaulted by Defendant Dunn;

c.  Failing to properly inform Plaintiff of his options and rights under Title IX and The University's Policy;

d.  Providing false information to Plaintiff in an attempt to prevent him from filing a formal Title IX Complaint;

e.  Providing false information to Plaintiff regarding the corrective actions taken by The University;

f.  Failing to provide interim support and protective measures to Plaintiff for him to continue his education in a safe environment free from harassment and retaliation;

g.  Providing false information regarding Defendant Dunn's employment status with The University;

h.  Failing to have a trained and competent Title IX Coordinator in place when Plaintiff reported his sexual assault; and

i.  Failing to adequately train employees, including, but not limited to, Defendant Donovan, of their reporting obligations under Title IX.

123.    The University agreed to provide Plaintiff with certain Due Process rights. The University guaranteed Plaintiff treatment in accord with clearly defined rules. The University promised Plaintiff the right to fair and equal treatment through published standards and procedures. The University breached its contract with Plaintiff by falsely, and with the intent to

Case ID: 220301385

deceive Plaintiff and in violation of the clearly stated rights, provide Plaintiff with false information regarding his rights and options under Title IX and The University's Policy, the complaint process under The University's Policy, and corrective actions taken by The University in response to Plaintiff's report. The clearly stated procedures under The Policy guaranteed Plaintiff the right to full, fair and truthful information regarding his rights and options under Title IX and The University's Policy without retaliation for reporting sexual misconduct against an employee or faculty member.

124.    As a result of the conduct of Defendants UArts and Donovan, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

125.    By reason of Defendants UArts and Donovan's breach of contract by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and brings this action to recover the same.

Case ID: 220301385

## COUNT II

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
#### (Plaintiff v The University Of The Arts and Kathryn Donovan)

126.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

127.    Under Pennsylvania Law, a covenant of good faith and fair dealing is implied in every contract. The University, by and through its authorized agents, servants, employees, and/or faculty members ignored and violated specific provisions of their contract with Plaintiff. The manner and conduct of the University, inclusive of not being honest in fact, resulted in a breach of the contract's covenant of good faith and fair dealing. The University's conduct relating to its handling of Plaintiff's report of sexual assault by a faculty member was intentional, malicious, arbitrary and capricious.

128.    The University's policies require:

a.    All employees, including Defendant Donovan, to report complaints of sexual harassment, sexual misconduct and sexual violence to The University's Title IX coordinator immediately;

b.    That students, including Plaintiff, are provided full, fair and accurate information regarding their rights and options under The University's Policy and Title IX;

c.    That The University put into place the necessary interim support and protective measures to ensure a student who reports sexual misconduct is provided a safe educational environment free from sexual harassment, sexual misconduct and sexual violence;

d.    The University have a competent Title IX coordinator in place at all times; and

e.    All students, including Plaintiff are provided a safe educational environment free from sexual harassment, sexual misconduct and sexual violence.

27

Case ID: 220301385

129.    Upon information and belief, Defendant Donovan, intentionally and with the malicious intent to deceive and or commit fraud did not report Plaintiff's complaint of sexual assault to The University's Title IX Coordinator, provided false information to Plaintiff regarding his options and rights under Title IX and The University's Policy, provided false information about Defendant's employment status with The University, and provided false information to Plaintiff in an attempt to prevent him from filing a formal Title IX complaint. The acts and actions of the University, by and through its authorized agents, servants, employees, and/or faculty members, as referenced herein, were intentional, malicious, arbitrary and capricious, as well as constituting a breach the Contract's covenant of good faith and fair dealing.

130.    The University contracted that they would follow the polices set forth in the Student Handbook and the Sexual and Gender-Based Violence, Discrimination, Exploitation, Stalking and Harassment Policy.  The University, by and through its authorized agents, servants, employees, and/or faculty members, breached the covenant of good faith and fair dealing with Plaintiff by intentionally refusing to follow the clearly defined steps by required upon receipt of a report of sexual misconduct and intentional attempt to mislead, misinform and provide false information to Plaintiff.

131.    The University agreed to provide Plaintiff with certain Due Process rights and an educational environment free from sexual harassment, sexual misconduct and sexual violence. The University breached the covenant of good faith and fair dealing with Plaintiff by providing false information to Plaintiff and with the intent to deceive Plaintiff, inappropriately and in violation of the clearly stated rights under The Policy and Title IX. Plaintiff was guaranteed under the Handbook and The Policy to be provided full fair and accurate information regarding

28

Case ID: 220301385

his rights and options under Title IX, an educational environment free from sexual harassment, sexual misconduct and sexual violence and to not be subject to retaliation for reporting sexual misconduct, which the University and Donovan intentionally denied him.

132.    As a result of the conduct of Defendants, UArts and Donovan, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

133.    By reason of Defendants UArts and Donovan's breach of contract by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and brings this action to recover the same.

## COUNT III

### NEGLIGENCE
### (Plaintiff v The University Of The Arts and Kathryn Donovan)

134.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

29

Case ID: 220301385

135.    Plaintiff was enrolled as an undergraduate student of Defendant UArts in its Musical Theater Bachelor of Fine Arts degree program, The Brind School of Theater and Defendant Donovan was the Head of the Musical Theater Department which created a special, confidential, and fiduciary relationship between Plaintiff and Defendants, UArts and Donovan, resulting in Defendants UArts and Donovan owing Plaintiff a duty to use ordinary care.

136.    At all times relevant hereto, Defendants, UArts and Donovan, operated by and through their authorized agents, servants, employees, officers and/or members who were acting within the course and scope of their employment and/or authority.

137.    At all times relevant hereto, Defendants, UArts and Donovan, were responsible for the safety and wellbeing of students of The University and owed a duty to provide a reasonably safe environment to students, visitors, their guests, including Plaintiff.

138.    At all times relevant hereto, Defendants, UArts and Donovan, owed Plaintiff a duty of ordinary care to ensure an educational environment free of sexual assault, sexual violence and sexual harassment while interacting with faculty, employees, representatives and/or agents.

139.    At all times relevant hereto, Defendants, UArts and Donovan, owed Plaintiff a duty of ordinary care to follow The University's Policy and Handbooks regarding the reporting of sexual misconduct, sexual violence and sexual harassment and to not retaliate against Plaintiff after he reported he was sexually assaulted by a faculty member.

140.    At all times relevant hereto, Defendants, UArts and Donovan, by and through their authorized agents, servants, employees, officers and/or faculty members who were acting within the course and scope of their employment and/or authority dramatically increased the risk

Case ID: 220301385

of harm to Plaintiff by failing to train, supervise enforce and inform faculty members of The University's Handbooks and The Policy.

141.    At all times relevant hereto, Defendants, UArts and Donovan, knew or should have known that Plaintiff was at an increased risk of harm of sexual abuse based on Defendants' failure to take appropriate action to train, supervise, oversee Defendant Dunn as well as Defendants' failure to properly investigate prior reports of sexual misconduct and service of alcohol to underage students.

142.    At all times relevant hereto, Defendants, UArts and Donovan, by and through their authorized agents, servants, employees, officers and/or faculty members who were acting within the course and scope of their employment and/or authority acted with willful disregard for and/or reckless indifference to sexual abuse and misconduct committed by faculty members and dramatically increased the risk of harm to Plaintiff by failing to enact and enforce policies against faculty misconduct and/or sexual abuse.

143.    At all times relevant hereto, Defendants, UArts and Donovan, by and through their authorized agents, servants, employees, officers and/or faculty members who were acting within the course and scope of their employment and/or authority acted with willful disregard for and/or reckless indifference to Plaintiff's safety by failing to properly train and supervise employees and faculty on the policies set forth in the Handbooks and The Policy.

144.    Defendants, UArts and Donovan, by and through their agents, servants, employees, officers and/or faculty members, were negligent, grossly negligent, careless and acted with a reckless indifference to the rights, welfare, and safety of Plaintiff while he was a student at The University by:

        a.    Failing to adequately train and supervise Defendant Dunn;

Case ID: 220301385

b.  Failing to adequately train and supervise Defendant Donovan;

c.  Failing to mandate that all faculty members receive sexual assault prevention and awareness and harassment training, including Defendants Dunn and Donovan;

d.  Failing to adequately train faculty, including Defendant Donovan, on their reporting obligations under The Policy;

e.  Failing to ensure faculty knew of The University's policies against sexual misconduct, sexual violence, sexual harassment and service of alcohol to underage students;

f.  Failing to implement and/or enforce a policy against serving underage students alcohol;

g.  Failing to provide and ensure a safe educational environment for students, including Plaintiff, free from sexual misconduct, sexual violence, and sexual harassment;

h.  Failing to provide and ensure an environment free from retaliation in response to reports of sexual misconduct by faculty members;

i.  Failing to use due care under the circumstances for the safety and wellbeing of Plaintiff;

j.  Violating applicable state, federal, and local regulations and codes;

k.  Failing to adequately plan, plot and implement safety policies, procedures and responses;

l.  Failing to require, use, and enforce proper and necessary safety measures;

m.  Failing to implement and provide interim support and corrective measures after Plaintiff reported he was sexually assault by his teacher;

Case ID: 220301385

n.   Failing to enact and enforce policies against retaliation;

o.   Enacting policies and procedures which were not adequate to prevent or
discourage faculty members from committing sexual abuse and/or serving
underage students alcohol; and

p.   Knowing or having reason to know of facts, which created a high risk of sexual
harm to Plaintiff and proceeding to act in conscious disregard of or with reckless
indifference to the known risk of serious and increased sexual harm to Plaintiff.

145.   Defendants, UArts and Donovan, had notice through its own faculty members,
employees, agents, and/or representatives of complaints of misconduct, sexual misconduct,
sexual harassment and serving underage students alcohol related to Defendant Dunn's
interactions with University students.

146.   Defendants, UArts and Donovan, had notice through its own faculty members,
employees, agents, and/or representatives that employees and faculty members were not properly
trained and supervised and thereby not following The University's procedures and policies set
forth in the Handbooks and The Policy.

147.   Defendants, UArts and Donovan, had notice through its own faculty members,
employees, agents, and/or representatives that The University did not have a trained and
competent Title IX Coordinator in place when Plaintiff reported his sexual assault.

148.   Defendants, UArts and Donovan, through its own faculty members, employees,
agents, and/or representatives knew or should have known that it was reasonably foreseeable that
Defendant Dunn would sexually assault University students and/or serve alcohol to underage
students.

Case ID: 220301385

149.    Defendants, UArts and Donovan, through its own faculty members, employees, agents, and/or representatives knew or should have known that it was reasonably foreseeable that reports of sexual misconduct, sexual assault and sexual harassment were not being handled in accordance with The University's Policy and Handbooks.

150.    As a direct and proximate result of the conduct of Defendants UArts and Donovan, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

151.    By reason of Defendants, UArts and Donovan's negligence and gross negligence by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and brings this action to recover the same.

## COUNT IV

## NEGLIGENT MISREPRESENTATION

Case ID: 220301385

**(Plaintiff v The University Of The Arts and Kathryn Donovan)**

152.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

153.    At all times relevant to this cause, and as detailed herein, Defendants UArts and Donovan, negligently provided Plaintiff with false or incorrect information or omitted or failed to disclose material information concerning Plaintiff's rights and options under The University's Policy and Title IX, including, but not limited to, telling Plaintiff that a formal complaint under Title IX would involve a public trial, that Defendant Donovan was drafting a complaint/statement for Plaintiff's review and approval over a 5 month period and that The University would expeditiously address Plaintiff's Title IX Complaint.

154.    At all times relevant to this cause, and as detailed herein, Defendants UArts and Donovan, negligently provided Plaintiff with false or incorrect information or omitted or failed to disclose material information concerning the status of Defendant Dunn's employment status with The University.

155.    The information provided by Defendants, UArts and Donovan, to Plaintiff was false and misleading, and contained omissions and concealment of truth about Plaintiff's rights and options under The University's Policy related to reporting incidents of sexual misconduct, sexual violence and sexual harassment, Defendant Dunn's employment status with the University and that The University would expeditiously investigate Plaintiff's Title IX report. Defendants, UArts and Donovan, made the foregoing misrepresentations knowing that they were false and/or without reasonable basis in fact.

156.    Defendants' intent and purpose in making these misrepresentations was to deceive and defraud Plaintiff; to intimidate and discourage Plaintiff from making a formal complaint under Title IX; to protect the University from public disclosure or scandal relating to the sexual

Case ID: 220301385

assault perpetuated by Defendant Dunn; and to falsely assure Plaintiff that the University

resolved the situation by terminating the employment of Defendant Dunn.

157.    The foregoing representations and omissions by Defendants were in fact false.

Plaintiff discovered in July 2021 that The University did not terminate Defendant Dunn's

employment despite being told in October 2020 that The University "long since terminated the

employment of this individual, not to be employed again."  Plaintiff further discovered in

October 2020, for the first time, that his report of sexual misconduct, violence and harassment

was never reported to the Title IX coordinate and The University had taken no action for five

months to investigate his report of sexual assault.  Further, The University didn't conduct the

Title IX hearing for over 14 months from the time that Plaintiff reported the assault.

158.    In reliance upon the false and negligent misrepresentations and omissions made

by Defendants, Plaintiff was induced to and did remain enrolled in The University, thereby

causing Plaintiff to sustain severe and permanent personal, emotional, and psychology injuries

resulting in depression and anxiety, and financial damages as well as significant delay in

obtaining a Bachelor's degree, delay in post-undergraduate employment.

159.    Defendants knew and had reason to know that Plaintiff did not have the ability to

determine the true facts intentionally and/or negligently concealed and misrepresented by

Defendants.

160.    Defendants had sole access to material facts concerning The University's

handling of Plaintiff's Title IX complaint, status of the Title IX investigation and the status of

Defendant Dunn's employment with The University.

Case ID: 220301385

161.    At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff decided to take a leave of absence from The University, Plaintiff was unaware of said Defendants' negligent misrepresentations and omissions.

162.    Plaintiff reasonably relied upon misrepresentations and omissions made by Defendants where the concealed and misrepresented facts were critical to understanding the true status of Plaintiff's Title IX investigation and whether The University was a safe environment for Plaintiff to finish and obtain his bachelor's degree.

163.    Plaintiff's reliance on the foregoing misrepresentations and omissions by Defendants' were the direct and proximate cause of Plaintiff's injuries as described herein.

164.    As a direct and proximate result of the conduct of Defendants UArts and Donovan, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment and has sustained and continues to sustain loss of earnings and earning capacity.

165.    By reason of Defendants, UArts and Donovan's negligence and gross negligence by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

Case ID: 220301385

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and brings this action to recover the same.

## COUNT V

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v The University Of The Arts and Kathryn Donovan)

166.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

167.    Defendants, UArts and Donovan, allowed Defendant Dunn to be in a position where he could sexually assault and harass students.

168.    Defendant Donovan was in a position as the Head of the Musical Theater Department whereby it was reasonable to expect she would receive Title IX complaints from students, such as Plaintiff.

169.    Defendants', UArts and Donovan's conduct as described herein constituted negligence and caused significant emotional distress and physical injury to Plaintiff.

170.    Defendants, UArts and Donovan could reasonably foresee that Donovan's actions would have caused the emotional distress to Plaintiff.

171.    Defendants, UArts and Donovan, acted with negligence, recklessness and/or disregard, knowing that Plaintiff would likely endure emotional distress because of what he was subjected to while under the care and control of the The University.

172.    Defendants' UArts and Donovan, , conduct directly caused Plaintiff's suffering that no person should have to endure.

173.    Any reasonable person under the same circumstances that Plaintiff was placed in by Defendants' UArts and Donovan, conduct would have also suffered emotional distress.

38

Case ID: 220301385

174.    As a result of the conduct of Defendants, UArts and Donovan, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, depression, anxiety, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, financial loss, delay in obtaining a Bachelor's degree, delay in post-undergraduate employment, and has sustained and continues to sustain loss of earnings and earning capacity.

175.    By reason of Defendants, UArts and Donovan's negligence and gross negligence by and through its authorized agents, servants, employees, and/or faculty members who were acting within the course and scope of their employment and/or authority, as aforesaid, caused Plaintiff to sustain serious and permanent and life-altering psychological injuries as well as physical injuries and financial loss as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendants, The University of the Arts and Kathryn Donovan, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and brings this action to recover the same.

## COUNT VI

## NEGLIGENCE
### (Plaintiff v Daniel Dunn)

176.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

177.    At all relevant times, Defendant, Dunn, was an adjunct teacher, faculty member and employee of Defendant UArts where Plaintiff was enrolled as an undergraduate student and

Case ID: 220301385

student in Defendant Dunn's Jazz Dance Practice class, which created a special, confidential, and fiduciary relationship between Plaintiff and Defendant, Dunn.

178.    Defendant Dunn owed a duty to Plaintiff and, by forcefully and aggressively sexually abusing and harassing Plaintiff, he breached that duty by acting with excessive and unreasonable force, threat and coercion, negligently and without due care for the reasons articulated in this Complaint.

179.    Defendant knew or should have known that Plaintiff was incapacitated and incapable of providing consent to engage in sexual acts and acted with willful disregard and/or recklessly for the reasons articulated in this Complaint.

180.    Defendant Dunn was unreasonable, negligent, grossly negligent, careless and reckless generally and in the following respects:

    1.    Failing to exercise reasonable care;

    2.    Failing to retreat when Plaintiff passed out or incapacitated;

    3.    Failing to obtain consent to engage in sexual acts from the Plaintiff;

    4.    Using excessive and unreasonable force;

    5.    Providing Plaintiff, who was under the legal drinking age, with alcohol;

    6.    Engaging in sexual acts when Defendant Dunn knew or should have known that he was infected with syphilis;

    7.    Disregarding Plaintiff's attempts to stop the sexual acts; and

    8.    Failing to exercise reasonable care.

181.    By reason of the negligence, gross negligence, carelessness and recklessness of Defendant, Dunn, Plaintiff was caused to sustain serious and permanent and life-altering psychological injuries as well as physical injuries as more fully described herein.

Case ID: 220301385

WHEREFORE, Plaintiff claims of Defendant, Daniel Dunn, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and brings this action to recover the same.

## COUNT VII

### ASSAULT AND BATTERY
### (Plaintiff v Daniel Dunn)

182.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

183.    Defendant Dunn, in forcefully and aggressively sexually abusing Plaintiff engaged in intentional, wanton, willful and outrageous conduct, acted with deliberate malice, and/or was grossly and outrageously negligent, acted with reckless disregard of and with deliberate callous and reckless indifference to the rights, interest, welfare and safety of Plaintiff for the reasons articulated in this Complaint.

184.    As a result of Defendant Dunn's intentional, wanton, willful and outrageous conduct, Plaintiff was caused to suffer an immediate and reasonable apprehension of harmful or offensive contact with his body and was caused to sustain a harmful and offensive contact to his body.

185.    As a result of Defendant Dunn's intentional, wanton, willful and outrageous conduct, Plaintiff was caused to suffer serious and permanent psychological injuries and physical injuries as a result of transmitting syphilis to Plaintiff as stated herein.

186.    Defendant, Dunn, intentionally assaulted and caused bodily harm to Plaintiff by inflicting serious and permanent psychological injuries and physical injuries caused by forcibly and aggressively sexually abusing Plaintiff and transmitting syphilis to Plaintiff, thereby violating the common law of the Commonwealth of Pennsylvania whose courts have adopted the

41

Case ID: 220301385

principles of the Restatement (Second) of Torts concerning the offenses of assault and battery,

including, without limitation:

§ 13 Battery: Harmful Contact

(1)    An actor is subject to liability to another for battery if:

    a.  he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

    b.  a harmful contact with the person of the other directly or indirectly results.

§ 15 What Constitutes Bodily Harm
    Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness

§ 18 Battery: Offensive Contact

(1)    An actor is subject to liability to another for battery if:

    a.  he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

    b.  an offensive co tact with the person of the other directly or indirectly results

§ 21 Assault

(1)    An actor is subject to liability to another for assault if:

    a.  he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

    b.  the other thereby put in such imminent apprehension.

187.    By reason of the carelessness, negligence, gross negligence, recklessness and/or intentional conduct of Defendant Dunn, Plaintiff, was caused to sustain serious and permanent and life-altering psychological injuries as well as physical injuries as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiff claims of Defendant, Daniel Dunn, sums in excess of Fifty Thousand Dollars ($50,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and brings this action to recover the same.

Case ID: 220301385

**RESPECTFULLY SUBMITTED,**

THE JOEL BIEBER FIRM

BY:    */s/ Melissa Fry Hague*
      MELISSA FRY HAGUE
      ***Attorney for Plaintiff***

Dated:  March 14, 2022

Case ID: 220301385